UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
ALEXANDER HORVATH,

                Plaintiff,  **MEMORANDUM & ORDER**

            - against -  12 CV 6005 (RJD) (JMA)

THE CITY OF NEW YORK, *et al.*,

                Defendants.
------------------------------------------------------- x
DEARIE, District Judge,

      Plaintiff Alexander Horvath was arrested twice on May 15 and May 16, 2012 at the 70th Precinct in Brooklyn and, in the course of one or both of these arrests, was allegedly assaulted by police officers. He commenced this action against various city defendants alleging violations of his federal constitutional rights, pursuant to 42 U.S.C. § 1983, and state tort claims. The gravamen of plaintiff's claims is that New York police officers arrested him without probable cause, beat him, denied him medical treatment, delayed his arraignment, and conspired to falsely convict him. Defendants move, pursuant to Fed. R. Civ. P. 56, for partial summary judgment on plaintiff's claims for false arrest, malicious prosecution, excessive pre-arraignment delay, denial of medical treatment, and denial of a fair trial. Defendants also move to preclude the report and testimony of Dr. Karen Jubanyik. For the following reasons, the motion for partial summary judgment is granted, and the motion to preclude the testimony of Dr. Jubanyik is denied.

## BACKGROUND

      On May 15, 2012, Mr. Horvath went to the 70th Precinct in Brooklyn for reasons that are disputed and not particularly relevant to this opinion. (ECF No. 84 at 6.) According to his arrest record, plaintiff entered the precinct, began yelling and screaming, refused to leave, and then was arrested at approximately 11:55 p.m. on May 15th for obstructing government administration in

the first degree, criminal trespass in the third degree, disorderly conduct, and resisting arrest. (ECF No. 85-4; ECF No. 85-11.) At approximately 12:30 a.m. on May 16, he was again arrested when, according to an arrest report, he punched officers and refused to be handcuffed when those officers tried to remove plaintiff from a cell. (ECF No. 85-5.) He was then charged with assault in the second degree and resisting arrest. (ECF No. 84 at 8.) While not at issue for purposes of the present motion, Mr. Horvath alleges in his amended complaint that in the course of this arrest he was kicked and punched by the defendant officers. (ECF No. 32; ECF No. 82-4 at D50.) Plaintiff claims that, as a result of this beating, he was bleeding from his nose, his eyes were swollen, he had a laceration on his face and severe bruising, and his wrist was injured. (ECF No. 84 at 12-13; ECF No. 82-2 at 12-13.)

The parties disagree as to whether plaintiff requested that defendants take him to a hospital (ECF No. 84 at 14; ECF No. 82-2 at 14), but at his deposition, Mr. Horvath indicated that he did not ask to go to the hospital at any point. (ECF No. 82-3 at 98.) In any event, plaintiff was taken by police officers to Coney Island Hospital at 12:45 a.m. on May 16 and was registered at 1:22 a.m. (ECF No. 84 at 10-11; ECF No. 85-7 at D124.) At 1:24 a.m. he was examined in triage, and from 1:53 to 2:02 a.m. he was examined by Dr. Jennifer Bocker, M.D. (ECF No. 84 at 16-17; ECF No. 85-7 at D129-30, D132.) Mr. Horvath told Dr. Bocker that he had been punched multiple times to the head and kicked, and that he was experiencing a headache, dizziness, and pain to his nose, eyes, and wrist. (ECF No. 84 at 18; ECF No. 82-2 at 18-19.) Dr. Bocker conducted an examination, noting injury to plaintiff's face and ordering CT scans. (ECF No. 84 at 21-25; ECF No. 85-7 at D130; ECF No. 82-2 at 22, 24-25.) While plaintiff's radiology results note "questionable bilateral nasal bone fractures" and "associated nasal soft tissue swelling," Dr. Bocker concluded that the CT scans did not reveal any fractures.

(ECF No. 85-7 at D130, D139-40.) Mr. Horvath was discharged from the hospital between 3:10 and 3:17 a.m. (ECF No. 85-7 at D130-31, D140.) He testified at his deposition that he was rushed through his hospital visit by the defendants, who pressured hospital employees to move quickly. (ECF No. 82-3 at 98.)

Plaintiff was taken back to the 70th Precinct at 3:35 a.m., and was subsequently arraigned for both of his arrests. (ECF No. 84 at 28, 31; ECF No. 85-9.) His arraignment concluded at 12:01 a.m. on May 17, 2012. (ECF No. 84 at 32.) In total, including the time for arraignment, plaintiff was in custody for 24 hours and 6 minutes for his first arrest (ECF No. 85-8), and for 23 hours and 31 minutes for his second arrest (ECF No. 85-9). For his arrest on May 15th, plaintiff was charged in criminal complaint number 41023 with attempted assault in the second degree, obstructing governmental administration in the second degree, resisting arrest, attempted assault in the third degree, and disorderly conduct. (ECF No. 84 at 33.) For his arrest on May 16th, he was charged in criminal complaint number 41024 with assault in the second and third degree. (ECF No. 84 at 34.)

After his arraignment, Mr. Horvath went to New York Community Hospital, complaining of pain in his head, face, neck, left shoulder, right wrist, and left ribs. (ECF No. 84 at 42-43.) He again underwent CT scans and was x-rayed. (ECF No. 84 at 44.) Medical records from New York Community Hospital indicate that plaintiff fractured his right ulna and was given a posterior splint and sling. (ECF No. 85-15 at D104.) The CT scans and x-ray did not reveal additional injuries. (ECF No. 85-15 at D108-19.)

On July 9, 2012, plaintiff appeared in the Criminal Court for the City of New York, Kings County. (ECF No. 84 at 35.) At this appearance, the State dismissed the charge of attempted assault in the second degree from the first complaint and the charge of assault in the

second degree from the second complaint. (ECF No. 85-13 at D166.) The prosecutor cited the complaining officer's lack of need for medical attention as the reason for the dismissal. (ECF No. 85-13 at D166.) Plaintiff then pled guilty "on each docket" to disorderly conduct, N.Y. Penal L. § 240.20, "in full satisfaction" and was sentenced to time served. (ECF No. 85-13 at D166-67.)

In his amended complaint, dated December 6, 2013, plaintiff pled claims for false arrest (counts one and two), excessive force (counts three and four), malicious prosecution (counts five and six), excessive pre-arraignment delay (count seven and eight), denial of medical treatment (count nine), assault and battery (count ten), and denial of fair trial (count eleven). (ECF No. 32.) Defendants seek partial summary judgment on counts one and two, five through nine, and eleven. (ECF No. 84.) As discussed below, defendants move to exclude the report and testimony of Dr. Karen Jubanyik. (ECF No. 86.)

## DISCUSSION

A. Defendants' Motion for Partial Summary Judgment

"Summary judgment may be granted only 'if . . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 82 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56). "The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). In evaluating the record to determine "whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003).

4

1. *False Arrest*

The elements of a claim for false arrest under section 1983 are "substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); see also Zaniewska v. City of New York, 569 F. App'x 39, 40 (2d Cir. 2014) (same). To prevail on his claims for false arrest under federal and state law, plaintiff must show that defendants "intentionally confined him without his consent and without justification." Weyant, 101 F.3d at 852 (citations omitted). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant, 101 F.3d at 852). "A valid prosecution resulting in conviction is conclusive evidence that probable cause existed for an arrest, Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986), even if the conviction is the result of a guilty plea to a lesser charge than that for which plaintiff was arrested." Hope v. City of New York, No. 08-CV-5022 (BMC), 2010 WL 331678, at *2 (E.D.N.Y. Jan. 22, 2010); see also Harris v. City of New York, No. 09-CV-3474 (KAM), 2013 WL 4858333, at *5 (E.D.N.Y. Sept. 10, 2013) (quoting Hope approvingly).

Here, plaintiff pled guilty, albeit not to the charges for which he was arrested. While he was arrested twice and charged with a number of offenses, plaintiff only pled guilty to disorderly conduct "in full satisfaction" of the charges against him. (ECF No. 85-13 at D166-67.) Nonetheless, plaintiff's guilty plea to disorderly conduct on each criminal docket is conclusive evidence that there was probable cause for his arrests, and therefore his false arrest claims are barred. See Houston v. City of New York, No. 06-CV-2094 (RJD), 2013 WL 1310554, at *4 (E.D.N.Y. Mar. 28, 2013) (plaintiff's guilty plea to a lesser offense of disorderly conduct precluded his false arrest claim); Sealey v. Fishkin, No. 96-CV-6303 (RR), 1998 WL 1021470,

at *4 (E.D.N.Y. Dec. 2, 1998) (Raggi, J.) (by pleading guilty to disorderly conduct, plaintiff necessarily conceded that the police could properly take him into custody ); Roundtree v. City of New York, 778 F. Supp. 614, 619-20 (E.D.N.Y. 1991) (plaintiff who plead guilty to disorderly conduct after being arrested for possession of cocaine was precluded from bringing a § 1983 action for false arrest). The fact that the prosecutor dismissed some of the charges against plaintiff does not change the fact that by pleading guilty, plaintiff "acknowledged that he was engaged in some unlawful activity." Sealey, 1998 WL 1021470, at *4.

Plaintiff argues that because he only pled guilty to one charge of disorderly conduct, his guilty plea does not bar false arrest claims for both arrests. The record does not support such a conclusion. Plaintiff pled guilty "on each docket" to disorderly conduct "in full satisfaction" of pending charges, and was sentenced "on each docket." (ECF No. 85-13 at D166-67.) By pleading guilty "to one count of disorderly conduct in full satisfaction of the charges that stemmed from [the two] arrests . . . [plaintiff] cannot challenge the validity of his two arrests" and therefore "any claims for false arrest . . . are meritless." Lluberes v. City of Troy, No. 11-CV-1346 (CFH), 2014 WL 1123413, at *12 (N.D.N.Y. Mar. 21, 2014); see also Gordon v. City of New York, No. 10-CV-5148 (CBA), 2012 WL 1068023, at *5 (E.D.N.Y. Mar. 29, 2012) ("it would be difficult to draw a principled distinction between [plaintiff's] two arrests wherein his conviction would prevent a false arrest claim based on the second arrest, but would allow a claim based on the first"). Plaintiff's guilty plea to disorderly conduct conclusively established probable cause for *both* of his arrests, and therefore his claims for false arrest under federal and state law are dismissed.

2. *Malicious Prosecution*

The elements of malicious prosecution under section 1983 effectively mirror the elements

6

of the same claim under New York law. See Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003) (citing Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992)). To succeed on a claim for malicious prosecution, "a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)).

Plaintiff's guilty plea to disorderly conduct also bars his claims for malicious prosecution. As with a false arrest claim, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Manganiello v. City of New York, 612 F.3d 149, 161-62 (2d Cir. 2010) (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)). A "guilty plea establishes probable cause" and precludes a claim for malicious prosecution. Houston, 2013 WL 1310554, at *4 (dismissing plaintiff's malicious prosecution claims since he pled guilty to disorderly conduct): see also Routier v. O'Hara, No. 08-CV-02666 (CBA), 2013 WL 3777100, at *5 (E.D.N.Y. July 17, 2013) (plaintiff's guilty plea establishes the requisite probable cause and therefore bars a malicious prosecution claim).

Plaintiff's guilty plea also bars his malicious prosecution claims because it "precludes a finding of 'termination of the proceeding in [his] favor.'" Larocco v. Jackson, No. 10-CV-01651 (NGG), 2012 WL 760396, at *3 (E.D.N.Y. Mar. 8, 2012) (modification in original); see also Rothstein v. Carriere, 373 F.3d 275, 286 (2d Cir. 2004) (citation omitted) ("A termination is not favorable to the accused . . . if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused."); Williams v. Young, 769 F. Supp. 2d 594, 603 (S.D.N.Y. 2011) (a "guilty plea pursuant to a plea bargain" means a "proceeding did not terminate in

7

[plaintiff's] favor"). Since plaintiff cannot establish two elements of a claim for malicious prosecution, the Court grants summary judgment in favor of defendants on plaintiff's federal and state malicious prosecution claims.

    3. *Excessive Pre-Arraignment Delay*

The amended complaint alleges that plaintiff's arraignment was delayed by defendants in violation of New York Criminal Procedure Law § 140.20 and his constitutional rights. As an initial matter, the Second Circuit has made clear that section 140.20 does not provide a private right of action under which plaintiff may sue. Watson v. City of New York, 92 F.3d 31, 36-37 (2d Cir. 1998); see also Ortiz v. City of New York, No. 11-CV-7919 (JMF), 2013 WL 5339156, at *3 (S.D.N.Y. Sept. 24, 2013), aff'd, 589 F. App'x 24 (2d Cir. 2014); Jones v. King, No. 10-CV-0897 (PKC), 2011 WL 4484360, at *5 (S.D.N.Y. Sept. 28, 2011). Plaintiff's claim for excessive pre-arraignment delay under New York law is dismissed.

For different reasons, plaintiff's claim under federal law also fails. A jurisdiction that arraigns a defendant "within 48 hours will, as a general matter, comply with the promptness requirement" of the Constitution. Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); see also Bryant v. City of New York, 404 F.3d 128, 138 (2d Cir. 2005) ("What is constitutionally required is that, except in extraordinary circumstances, the arrestee be given a hearing into probable cause for the arrest within 48 hours."). Although a delay of less than forty-eight hours can violate federal law "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably," Cnty. of Riverside, 500 U.S. at 56, the "burden of showing that the delay was unreasonable" is squarely on the plaintiff, Mazza v. City of New York, No. 98-CV-2343 (ILG), 1999 WL 1289623, at *10 (E.D.N.Y. July 13, 1999).

8

Here, plaintiff was arraigned within approximately twenty-four hours of his two arrests. (Plaintiff was arraigned 24 hours and 6 minutes after his first arrest, and 23 hours and 31 minutes after his second arrest.) (ECF Nos. 85-8 and 85-9.) Plaintiff has made no showing that this delay was unreasonable and, accordingly, summary judgment is granted on this claim.[1] See Ortiz, 2013 WL 5339156, at *3 (dismissing plaintiff's claim because he "was detained for fewer than forty-eight hours, and he has introduced no evidence that the alleged delay was unreasonable"); DeVito v. Barrant, No. 03-CV-1927 (DLI), 2005 WL 2033722, at *6 (E.D.N.Y. Aug. 23, 2005) (granting summary judgment because there was "no evidence . . . upon which a reasonable juror could conclude defendants intended to delay plaintiff's arraignment"); Mazza, 1999 WL 1289623, at *10 (granting summary judgment where plaintiff failed to show that his forty hour day was unreasonable).

   4. *Denial of Medical Treatment*

Plaintiff claims that defendants were deliberately indifferent to his medical needs when they rushed him through his hospital visit, thereby delaying proper medical treatment. In order to prevail on a claim for constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).[2] Significantly, "not every lapse in medical care is a constitutional wrong." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). A plaintiff must prove (1) that he had an objectively "serious medical condition," and (2) that this

---

[1] In fact, given the hour at which plaintiff was arrested and the fact that he was taken to a hospital before being arraigned, this delay strikes the Court as reasonable.

[2] Because plaintiff was a pretrial detainee at the time of the alleged violation, the source of his constitutional rights for a claim of deliberate indifference to serious medical need is the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). Nevertheless, regardless of whether plaintiff's claim is an Eighth Amendment or Due Process claim, the applicable standard is the same. Id.

condition was met with subjective "deliberate indifference" on the part of the defendants. Id. at 280. To establish a serious medical condition, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).

Where the claim concerns the inadequacy of treatment, as opposed to its complete denial, the seriousness inquiry is "narrower," Salahuddin, 467 F.3d at 280, and focuses on "the particular risk of harm faced by a [detainee] due to the challenged deprivation of care, rather than the severity of the [detainee's] underlying medical condition, considered in the abstract." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003). "When the basis for a [detainee's] . . . claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support a[] . . . claim." Id. (emphasis in original).

Here, Mr. Horvath has not shown that any harm—let alone sufficiently serious harm—was caused when, as he claims, the defendants rushed hospital staff, preventing a thorough exam. Plaintiff has offered no evidence that being rushed through Coney Island Hospital "exacerbated his medical condition, caused infection, or otherwise subjected him to an increased risk of harm." Williams v. Williams, No. 13-CV-3154 (RA), 2015 WL 568842, at *5 (S.D.N.Y. Feb. 11, 2015). There is no evidence that his condition worsened as a result of being rushed through Coney Island Hospital, or as a result of the delay between visiting Coney Island Hospital and receiving additional treatment at New York Community Hospital—treatment that came roughly 24 hours after his first hospital visit. Plaintiff does, of course, offer evidence of a number of

10

injuries resulting from the alleged assault. "However, these injuries are attributable to the alleged assault; the plaintiff makes no attempt to connect them to the alleged delay in medical attention." Toliver v. Office-Dep't of Corr. NYC, No. 10-CV-5354 (DAB) (JCF) (S.D.N.Y. Dec. 11, 2012), adopted, 2013 WL 3783727, at *13 (S.D.N.Y. July 9, 2013); see also Rodriguez v. City of New York, 802 F. Supp. 2d 477, 482 (S.D.N.Y. 2011) (dismissing a claim for deliberate indifference because there was a "lack of evidence" showing that a delay caused a "sufficiently serious" injury). Accordingly, summary judgment is granted on this claim.

5. *Denial of Fair Trial*

A person suffers a constitutional violation redressable under § 1983 if an investigating official (1) "creates false information likely to influence a jury's decision," (2) "forwards that information to prosecutors," and (3) the plaintiff is deprived of his liberty as a result. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); see also Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012) (unpublished). In contrast to a claim of false arrest or malicious prosecution, the existence of probable cause does not defeat a claim of fabrication of evidence. See Ricciuti, 124 F.3d at 130; Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003). A plaintiff asserting a fair trial claim need not show he was convicted or that the case even went to trial. See id. at 127. Here, Mr. Horvath alleges that defendants conveyed false facts about his arrest to the district attorney—specifically, that he assaulted police officers. Plaintiff cannot show, however, that any of these allegedly false statements were material—*i.e.*, "likely to influence a jury's decision." Ricciuti, 124 F.3d at 130.

As a preliminary matter, plaintiff's ability to recover for violations of his right to a fair trial is hindered by the common law doctrine that shields witnesses, including officers, in a cloak of absolute immunity for their testimony in judicial proceedings. See Rehberg v. Paulk, 132 S.

11

Ct. 1497, 1505 (2012); Briscoe v. LaHue, 460 U.S. 325, 335 (1983); Jovanovic, 486 F. App'x at 152 (dismissing a fair trial claim where "the only avenue by which the [allegedly false evidence] could reach the jury was through [the office's] testimony, for which he enjoys absolute immunity"). Plaintiff attempts to circumvent the bar of absolute immunity by casting his claim as one directed at communications with the prosecutor. But testimonial immunity extends to "preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony" to the prosecutor. Rehberg, 132 S. Ct. at 1507; see also Fappiano v. City of New York, No. 01-CV-2476 (SLT), 2015 WL 94190, at *20 (E.D.N.Y. Jan. 7, 2015).

Additionally, the allegedly false statements by defendants to the district attorney "would never even get to a jury—it would amount to inadmissible hearsay—a far cry from the alleged false confessions at issue" in the cases in which fabrications claims were pled or proven. Jones v. City of New York, No. 12-CV-3658 (JG), 2013 WL 6047567, at *10 (E.D.N.Y. Nov. 14, 2013), vacated on other grounds, 2015 WL 895294 (2d Cir. Mar. 4, 2015) (citing Ricciuti, 124 F.3d at 130; Jocks, 316 F.3d at 138); see also Brown v. City of New York, No. 14-CV-5372 (BMC), 2014 U.S. Dist. LEXIS 181736, at *9-10 (E.D.N.Y. Dec. 23, 2014) ("there was never a danger that the allegedly fabricated evidence would reach a jury" because "the allegedly false statements . . . told to the district attorney . . . are all inadmissible hearsay"). Because plaintiff has not adduced any evidence to show that the allegedly fabricated evidence had even a potential to influence a jury's decision, this claim is dismissed.

B. Defendants' Motion to Preclude the Testimony of Dr. Jubanyik

Defendants also move to preclude the testimony of Dr. Jubanyik, an assistant professor of emergency medicine at Yale University School of Medicine, who will testify that, in her medical opinion, Mr. Horvath's injuries "are consistent with an assault." (ECF No. 86-1 at 2.) In

reaching her opinion, Dr. Jubanyik spoke to Mr. Horvath and reviewed his medical records, photographs from the time of his arrests, and statements by other witnesses. Defendants do not challenge Dr. Jubanyik's qualifications as a medical expert. Rather, defendants argue that Dr. Jubanyik's testimony (1) will not assist the jury and gives an opinion as to an ultimate fact, (2) lacks a basis in law enforcement training or experience, and (3) does not meet the requirements of reliability set forth in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

Expert opinion testimony is permitted under Federal Rule of Evidence 702 if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). An expert's opinion meets this requirement provided that (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d); see also Daubert, 509 U.S. at 587 (expert evidence is admissible if it "rests on a reliable foundation and is relevant to the task at hand"). Daubert sets forth a series of factors that, while not a "definitive checklist or test," may be considered when determining whether proffered expert testimony "has the required indicia of scientific reliability. Nimely v. City of New York, 414 F.3d 381, 396 (2d Cir. 2005) (quoting Daubert, 509 U.S. at 593-94)). The test of reliability, however, is flexible, and the Daubert factors "neither necessarily nor exclusively appl[y] to all experts or in every case." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

The Court declines to preclude Dr. Jubanyik's testimony. However, the testimony will be limited at trial to subjects about which she is competent to testify. See, e.g., Roguz v. Walsh, No. 09-CV-1052 (TLM), 2013 WL 1498126, at *7 (D. Conn. Apr. 5, 2013) (admitting a physician's testimony because it did not "involve legal conclusions regarding the objective

reasonableness of the force used, but rather expresses an opinion that certain [characteristics] of wounds and contusions reflect the causation of those wounds and contusions"); King v. Brandtjen & Kluge, Inc., No. 94-CV-411 (JTC), 2001 WL 1804345, at *9 (W.D.N.Y. June 20, 2001) (holding that a doctor "may generally testify to what he understands to be the cause of plaintiff's injuries"). Dr. Jubanyik may not testify as to *who* assaulted plaintiff, render ultimate legal conclusions—such as whether excessive force was used—, or regurgitate plaintiff's account of the events at issue. Dr. Jubanyik may offer *medical* opinion testimony, and to the extent she attempts to offer testimony at trial outside that scope, defendants may then object to the relevance or admissibility of such testimony.

## CONCLUSION

For the reasons stated above, defendants' motion for partial summary judgment is GRANTED. Counts I, II, V, VI, VII, VIII, IX and XI are dismissed. Defendants' motion to preclude the report and testimony of Dr. Karen Jubanyik is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
       April 17, 2015

                                            /s/ Judge Raymond J. Dearie
                                            _____
                                            RAYMOND J. DEARIE
                                            United States District Judge